Good morning, Your Honors. I'm Michelle Evans-Jackson, and I represent A.C. Phillips in this matter, and I am before you for one reason and one reason alone. The district court erred when they dismissed Mr. Phillips' discrimination case based on age, and let me tell you why. The evidence that was presented in the district court had both direct and indirect evidence, and here's the direct evidence. Costler Lancaster, who were charged with the responsibility of deciding which employee, Phillips or Nunez, that would leave, made comments. Comments when they gave him his layoff slip, which this Court has found, or the Supreme Court, rather, excuse me, in Reeves v. Sanderson, has been sufficient to be direct evidence. Even this Court in Goodwin v. Hunt Weston said a direct comment about a person's age at the time near to the adverse act can be evidence of direct discrimination based on age. And it doesn't have to be substantial, Goodwin says. It can be insubstantial. Now, that coupled with the indirect evidence, the McDonnell-Douglas test, the circumstantial evidence, Boeing admits, which I find it ironic, on page 135 in the declaration, that ---- Let me read along with you. Where are you? Sure. I'm on page 135 of the excerpts of records. 135 of the ER. Not the supplemental, but the ER. That is correct, Your Honor. 135. And I'm reading from paragraphs. Hang on, hang on, hang on. I'm slow. I'm slow. Okay. Declaration of Joseph Costler. That is correct, Your Honor. A decision-maker. This is the purpose of Blue Street, the organization where Phillips and Nunez are working. It says, notwithstanding the decision to outsource composite manufacturing, Boeing determined that it nevertheless needed the ability to repair, modify, enhance, and redesign certain 717 composite parts without the delay associating with the outside of the building. Now, we know that there were outside manufacturers, which suggests that we knew they were going to be doing outsourcing, obviously. And this team of people were created to prevent outsourcing problems. Now, what do we know about the facts of this case that Judge ---- the judge had in front of her? We know that Costler and Lancaster both testified that Mr. Phillips is the guru in composites, the guru. Yeah, but on the next page, what's happening here is as time moves on, the Blue Street is set up at a time when they need more composite work than later on, when they're basically finished the setup work for the old ---- I guess it's an old DC-9 that becomes the 717. They use ---- they need less and less composite work. They need more and more sheet metal work. So in paragraph 14 of the same declaration, Costler says, in September 2000, Nunez was managing a crew of approximately 20 unionized employers, employees, who worked in a variety of different areas, whereas Plaintiff was managing a crew of only five who worked exclusively in components ---- excuse me, in composites. So I have trouble seeing how the Costler declaration is very helpful to your client. Okay. Well, the Costler declaration is only helpful in determining what the Blue Street Department was. What's really important is ---- But the ---- but its function or its actual jobs shifts over time. Your Honor, that's refuted and disputed by both the people that were left there. Okay. We have the Mr. Giesel's ---- not Mr. ---- Mr. Norris Hambrick's declaration, which is on page 157 of the record, which actually clearly states that there was continuous work on composite parts. We also have Mr. Giesel's deposition on page 109. And this is very ---- Mr. Giesel, who's also a manager with personal knowledge of what goes on in Blue Street, testifies on page 109, lines 12 through 20, my first thought was they were still doing a lot of work in the cockpit, and why were they laying him off? We talked about that. And I understand the Court's focus on Mr. Costler's change of the unit, but that did not, in fact, occur. It's just pretext, and that's what we've been saying, for masking age discrimination. Let me ask you, did you establish a prima facie case of age discrimination? Yes, I did, Your Honor. In fact, the district court actually wrote in her order that the plaintiff had established a prima facie case of age discrimination, if you look at the judge's order. And the defendant did not file a ---- an appeal of that decision. What you needed was to show that your client was a member of a protected class, ages 40 to 70, and he falls within that, and that he was performing his job in a satisfactory manner, he did that, and that he was discharged, he did that, and that he was replaced by a substantially younger employee with equal or lesser qualifications. And, Your Honor, I can just go to those really briefly. Yes, I did that. I did that. The gentleman was 37 years old. He did not have further management experience. If you would look at what ---- Well, that's not exactly true. He had been managing a group of 20 employees, whereas Mr. Phillips had only been managing a group of five. So there's something to be said for the sheer number of people that he was responsible for managing. And I don't think there was anything in the record that suggested he was dissatisfied with his management. But in years, yes, you're correct, but there's a different ---- there's another factor in there, isn't there? Your Honor, and I would agree with you. We're looking at a period of January of 2000 to November of 2000 that that actually is a true fact. If you would look at the totality of the record that was presented to the lower court, she actually ---- Judge Stadler actually got a different fact. She got the fact that Mr. Phillips had been previously supervising as many as 163 employees, that Mr. Phillips was asked to go to this blue streak, which was a smaller unit created by Boeing just to deal with the problems that would come from outsourcing the composite parts. Now, if you tell me that you're creating a unit that starts at the January of 2000, because it's the end of 1999, which is kind of a discrepancy, you tell me that you're creating this unit, and you're creating this unit solely to prevent what the problems come from outsourcing the composite materials. Do you keep the person that only deals with machine factory things, or do you keep the person that only deals with composite things, or do you keep someone that knows not just the machine operation, but also is the guru in composites? Can I ask you a question? Sure. What were the disputed issues of material fact? Well, I mean, you know, if there are some, then, you know. That was my problem, too, Your Honor. We actually disputed each and every one of the facts. It did not, Judge Stotler did not use our separate statement of uncontroverted facts as her order. She used the defendants, which actually left our disputed. I'm asking you. What were the disputed facts? The disputed facts were this. Was there evidence that the blue streak had gone away from what Judge Fletcher's order said, from composite parts, to solely machine operation, disputed, because of the evidence, from Nork Hambrick, Frank Gissel, A.C. Phillips, and actually what continues to this day, because Nork Hambrick's declaration. You've got to just tell us what they disputed. Okay. The disputed facts was whether or not. The facts that are undisputed. Okay. The facts that were in dispute is whether or not the blue streak operation had composite work left when they discharged Mr. Phillips. Disputed fact is whether or not Mr. Phillips had no knowledge of machine operation at the time the decision makers made the decision. The disputed facts that give rise to age discrimination was also whether or not Mr. Phillips was laid off because of his decision. There were facts that the statements that Costler and Lancaster made were made not in a time close to the layoff. We disputed that they were made at a time at the layoff. In fact, at the time he had them, his slip of layoff. Well, I mean, and with regard to the one I see here, he was, he was, he was, I think, he testified that, that he was told, well, you're an old man, you've been around, you've been doing this a long time, something of that nature. And people were asking him, asking him if he would consider, considered retirement and, and things of that nature. I mean, were they, were those disputed? The defendant did not dispute that they said that. What they disputed is whether or not it goes to the issue of age discrimination, because that was not a disputed fact. They actually did make those statements. They did not dispute that, Your Honor. The lower court felt that that was not specific or substantial enough to proceed, to go to a trier of fact. We disagree. We disagree that the cumulative evidence based upon, if this Court would look at Radd versus, which is, which is one of our decisions, Radd versus Fairbanks-Northstar School District, it would determine that this case almost actually lays like a transparency on that case, in that the evidence in this case surely supports that Mr. Phillips was more qualified than Mr. Phillips. Then Mr. Nunez, for the reasons being that the underlining circumstance that Bluestreak no longer had any composite work, was not factually correct. It had, by the evidence from everyone but the decision-makers, it had all kind of composite work. Kennedy. Were you aware of a case called Shindrig versus Columbia Machines? Shindrig versus, I've read that case, Your Honor. It was a good case, because Judge Trott wrote it, and a fellow named Pregerson was on the panel. So was Judge Fitzgerald, and in that case, the opinion says, and that was an age discrimination case. The ultimate question is one that can only be resolved through a searching inquiry, one that is most appropriately conducted by the fact-finder upon a full record. I think that's an excellent opinion, Your Honor, but the plaintiff never, the plaintiff never got an opportunity, Your Honor, to go through, let the fact-finder decide, because the lower court took that away from the fact-finder. Let me go at the composite issue in this fashion. Bowling never contended, I think does not now contend, that the Bluestreak did no composite work. They did some, and I suspect, well, at the time of the events kind of cut off at this case, they continued to do composite work. What they contend is that if forced to choose between Nunez and Mr. Phillips, they didn't, they weren't faced with, there's none of the composite work, entirely sort of, I'll call it machine or metal work, but rather that there wasn't, by comparison, very much composite work. I mean, that's the contention. I don't think anybody's contending that there was no composite work. And, Your Honor, we cannot suppose that that's, that what is little, little bit, what is the quantities? No one at Bowling defined except for the persons that were not the decision-makers. Mr. Gissel, just a supervisor in the Bluestreak, says there was a lot. Mr. Hanbrick, who's working on it, says there was so much, and there was nobody there. I had to continue to call Mr. Phillips at home. Well, I understand you said that, but in a sense, it's, that almost helps Bowling. There's nobody there, he's the only guy in the whole shop who's doing composite work, who has to call Mr. Phillips at home. Now, they might have made a mistake, given that they let go. Now, I'll say this very clearly, it's very obvious that Mr. Phillips was a dedicated and highly-skilled employee. And it's apparent from a number of things, including these calls from Mr. Hanbrick to him, saying, hey, what do I do? By then, he's at home. But he's also not calling anybody else in the Bluestreak shop, because I don't think there's anybody else there who does composite work. Your Honor, that would be good, but the legitimate business reason of Bowling is that Mr. Phillips was not qualified as Mr. Nunez. That's what they said. It's not what we said. It's what Bowling offered to Mr. Phillips. And they're basing that on the fact that this gentleman, Mr. Nunez, was an expert in machine shop. Now, there's been no testimony presented to this Court to explain what an expert in machine shop is. Because clearly the evidence that was submitted to the lower court and to this Court defined what Mr. Phillips' expertise was from machine shop all the way up to composite. But no one has brought that forward, and that's the reason why we believe it created a triable issue. I'm not asking this Court to find discrimination. I'm just saying that Rule 56 says the evidence has to be looked at in a favor for my client, Your Honor, in a fight most favorable. And I don't believe the district court did that with this type of evidence. We've been able to show that there's been statements. It's been undisputed. We've been able to show that the reason for Bluestreak just disappeared within nine months, because now we're saying it's machine shop. And then we're hearing that there was little or no work, but then we hear that there was a lot of work. What was it? Only a trial. Those are factual issues, not issues as a matter of law. And I think that's where the district court may err. That's all I'm saying. And I'd like to reserve some time, because I know I'm going to need some. Okay. Thank you, Your Honor. Good morning, Your Honor. I'm Barbara Johnson. Actually, good afternoon, almost. This is not a case of age discrimination. And while I do — I am unaware of the Schindler case, which says that typically you want to have everything go to the trier of fat, once a legitimate reason — this is from whatever page is here. Let's see. 1410. Here's what's said there. This court has set a high standard for the granting of summary judgment in employment discrimination cases. Most recently, we explained that we require very little evidence to survive summary judgment in a discrimination case, because the ultimate question is one that can only be resolved through a searching inquiry, one that is most appropriately conducted by the fact-finder upon a full record. And it goes on. Your Honor, I understand that as to a prima facie case of discrimination. It is undisputed that in terms of establishing a prima facie case, the standard is you need a very nominal amount of evidence to withstand establishing a prima facie case. However, U.S. Supreme Court case law is equally clear that once the defendant complies with the McDonnell-Douglas matrix and establishes a legitimate business reason for its decision, which is not discriminatory on its face, then the burden shifts to the plaintiff to then show substantial and specific responsive evidence. Therefore, the more nominal element that's needed in the prima facie case differs once a legitimate business reason is shown. This is a case. I have to emphasize this. But the Schindrig case is not a prima facie evidence case. I can't tell you, because I'm unaware of the Schindrig case. It wasn't mentioned in the briefing. Okay. Okay. But I am aware of the Anderson, which is the U.S. Supreme Court case.  Well, I'm unfamiliar with it as the appellant was as well. It was not a case. It's an appellant's brief. I understand. But she also indicated she was unfamiliar. Well, she needed a little refreshing of her memory. Me, too, then. Well, I'll tell you, we're all getting old. We're all getting old. We're all getting old. But the mere fact we're all getting old doesn't mean we're the victims of discrimination. I'd like to address the what I would call the innocuous comments in appellant's assertions that those are evidence of direct discrimination. The fact that somebody says to somebody, you've been around for a long time, have you considered retirement, are simply innocuous statements, more onerous statements. It could be innocuous. It also could be invidious, couldn't it? And isn't that the problem? I don't believe so, Your Honor, because you If there's only one way that that statement can be interpreted, then you're home free. But if there's any way that that statement could be interpreted, and given the variety of voice inflection and emphasis and facial expression, whether somebody is smirking or whether they're winking or whether they're laughing or whether they're weeping, might have a bearing on how one would construe that statement, wouldn't it? I don't believe so in this context, Your Honor. There are Do you believe that that statement is only capable of one construction? I believe it's only capable if you've been around here a long time. I don't think that infers that somebody could have been working there at age 40 and been around for a long time because they started working at age 18. That doesn't mean that the comment is necessarily related to his or her age. But there's a question on that, though. Not necessarily, but that's not the question. Is it potentially, or is it possibly? Suddenly, not necessarily, but is it susceptible to a different interpretation? I mean, you've got to meet the argument head on here. As a denotative matter, I think you're correct. But a denotative matter is going to be different from a connotative matter, which is going to take into account context. And as a matter of denotation, you've been around a long time. Yes means you've been here for a long time. But that doesn't tell us anything, again, about the connotation that one might give to that statement. But in the same token, it doesn't say that the person's necessarily old. They could have been a person that was 40 years old and started working at age 20, and they've been with the company for 20 years. But apply the context. And apply it to this case. Doesn't say that the person's necessarily old because the person could have been 40. How old was Mr. Phillips? Mr. Phillips was 63 at the time of his termination. So obviously, your statement doesn't apply to this case. Okay. Except for the fact that the person who made the statement was the same person who had hired Mr. Kossler one year ago. And the inference is it would be ludicrous to say that at age 62, Mr. Phillips was deemed to be too old to work for the company. And then a year later, it would be ridiculous to say that at age 63, Mr. Kossler felt that Mr. Phillips was too old, but at 62, he felt he was experienced enough that he wanted to hire him. And that's the person who made the comments. But it's not absolute. It's always compared to what or compared to whom. I understand. But it would seem that since the evidence indicated that he said it in a jovial manner according to Mr. Phillips' own testimony, it was not meant to be derogatory, and there are less, there are more. What I would characterize as onerous statements that have been found on summary judgment not to be discriminatory. We don't like people with gray hair. We don't want old-timers around. None of that was said. Also, Mr. Phillips was offered another job. After one month after receiving his layoff, he was offered another job with the company. And what was the difference in salary? The difference, hey, when you're getting laid off, and you go from 12,000 to 5,000 people and I asked you a question. I believe the difference in salary is about $7,000. No, that's wrong. It was from the 70s down to the 50s. $20,000. Yeah. That I'm not sure helps you at all. They're taking a guy who's 63 years old and saying, you know, we're promoting Mr. Nunez or giving Mr. Nunez the overall control of this shop. But we'd be happy to give you a job at about $20,000 less. It depends how you look at it. If the company was having the wide downturn that it did, I'd be happy to have a job. Because unemployment pays a lot less than $59,000 a year. Yeah, but see, those are all questions for the trier of fact. I don't believe that those are questions for the trier of fact. I think that the evidence that's presented has to be in some way plausible. There's nothing to dispute that there were reductions in force that took place. There's nothing to dispute that the decision-maker who initially retained Mr. Phillips was the same individual that returned him. Moreover, there's been no evidence to indicate, you know, that the declarations indicate that given the amount of work that remained, there was more work that was needed not on the fabricate, on the composite fabrication side, but on the steel side, and that Mr. Nunez did that. Plus, there's no evidence to suggest that the five remaining unionized workers who are highly skilled needed the services of Mr. Phillips. This is just an unfortunate reduction in force. Wait a minute. That's clearly wrong. We have plenty of evidence that Mr. Hamrick's calling him at home and clearly needs the services. Now, you may say he didn't need to call him or, you know, whatever it is, but we've got evidence that directly contradicts what you just said. Well, but there's no evidence that he didn't maybe like Mr. Nunez and didn't try to attempt to contact Mr. Nunez. But there's plenty of evidence to say he didn't. Or contact a manager and say he didn't. Excuse me. There's plenty of evidence that Mr. Nunez does not know about composites. Well, but nobody ever said he did know about composites. In fact, he admitted, he said, I know very little about it. But what the evidence so he was never, it would have been discrimination had we said to Mr. Phillips, we are retaining a composite person and you know nothing about composites. You're simply unqualified for this job. But we didn't do that. We acknowledge that Mr. Phillips had excellent skills, okay, but we also acknowledge that he didn't have the skills necessary in our business judgment to perform  with respect to the Blue Streak Department. I just found the number. It was 55,990 that was the offer. And he had been making 71,973. Yes. So it's basically 5,600, 7,200 at a salary of 16,000 or less. Yes. And all of the other managers were also downgraded to salaried positions, as Mr. Phillips testified at the time of his layoff. There were just unfortunate reductions enforced by 2003. There was only 700 people left working at the Long Beach facility and commercials. Did Mr. Nunez take a salary cut? I don't know. That's not in the record. I don't know. This is, age discrimination is an intentional act. It's not one shouldn't second-guess what is a legitimate business decision. There's nothing to indicate in this record that the decision-makers acted with age animus. The statistics show that the decisions that were made had no relation to one's age. Those statistics remain unrefuted. There's nothing to indicate that anybody went through a process of intentionally eliminating people that were over the age of 40 or 50 or 60. In fact, the evidence is to the contrary. The mere fact that somebody may disagree as to whether a decision was made with respect to qualifications is insufficient to show age animus. And there cannot be a cause of action for negligent discrimination saying, oh, you know, you didn't act reasonably in making your decision. This, to the, all Mr. Phillips is saying is, you know, you guys made a mistake. You should have kept me and gotten rid of the other guy. But once again, nobody's presenting evidence. Mr. Phillips never presented any evidence, any acknowledgment of his deposition. He didn't know the qualifications of Mr. Nunez. So therefore, how can he have the foundation to establish that his qualifications are any more than Mr. Nunez? All he can say is, I think I was the best, and I should have been retained. But that's not the standard. I'll submit unless the Court has any further questions. Kennedy. Thank you. Is there any rebuttal? Just very briefly, Your Honor, I receive that I need to just address one issue. And that is, this evidence that was submitted at the lower court to Judge Stotler should have been looked in a light most favorable to plaintiff. And I'm asking this Court to just allow us to get to a trier effect as that opinion written by those justices in the Shindrick case said, it's a shifting fact-finder's decision, and it should have never been decided as a matter of law. Thank you. If you have any questions for me, I would be more than happy to answer them. As I was the trial court, I was the one that got the decision against me in the lower court. All right. No questions? I don't think so. Okay. All right. Matters submitted. Matters submitted. All cases are submitted. And this last one, Strong v. Lovino, Warden, that's submitted. All right. We'll recess until 8 a.m. tomorrow morning.
judges: Pregerson, W. Fletcher, Bybee